IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-00295-PAB-CYC

PROFESSIONAL BACKGROUND SCREENING ASSOCIATION,

     Plaintiff,

v.

PHILIP J. WEISER, in his Official Capacity as Attorney General of the State of
Colorado,

     Defendant.

---

**ORDER**

---

     This matter comes before the Court on the Motion to Dismiss Pursuant to Fed. R.
Civ. P. 12(B)(1) [Docket No. 8].  Plaintiff filed a response, Docket No. 41, and defendant
filed a reply.  Docket No. 46.

## I.  BACKGROUND[1]

     Plaintiff Professional Background Screening Association ("PBSA") is an
international trade association of over 800 member companies that provide
employment, insurance, and tenant background screening and related services.  Docket
No. 1 at 5, ¶ 15.  PBSA filed this action on January 28, 2025, arguing that two
provisions of the Colorado Consumer Credit Reporting Act ("CCRA"), Colo. Rev. Stat.
§ 5-18-101 *et seq.*, are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.
§ 1681 *et seq.  Id.* at 9-10, ¶¶ 37-40.  The FCRA governs all manner of consumer

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are
presumed to be true, unless otherwise noted, for purposes of ruling on defendant's
motion to dismiss.

reports used for employment screening, tenant screening, insurance, and many other purposes. *Id.* at 6, ¶ 21. One area of consumer reporting which the FCRA addresses is what can and cannot be included in a consumer report. *Id.* at 7, ¶ 25. Specifically, the FCRA proscribes consumer reports from including, among other items, civil suits, civil judgments, or arrest records that antedate the report by more than seven years, and any other adverse item of information other than records of convictions of crimes that antedate the report by more than seven years. *Id.*, ¶ 28 (citing 15 U.S.C. §§ 1681c(a)(2), 1681c(a)(5)). The FCRA preempts state laws which are inconsistent with any provision of the FCRA, to the extent of the inconsistency. *Id.* at 8, ¶ 33 (citing 15 U.S.C. § 1681t(a)). Moreover, the FCRA states that "'[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681c of this title, relating to information contained in consumer reports.'" *Id.* at 9, ¶ 35 (quoting 15 U.S.C. § 1681t(b)(1)(E)).

Section 5-18-109 of the CCRA prohibits reporting "'[r]ecords of arrest, indictment, *or conviction* of a crime that, from the state of disposition, release, or parole, predate the report by more than seven years.'" *Id.*, ¶ 37 (quoting Colo. Rev. Stat. § 5-18-109(1)(e)). Plaintiff argues that this conflicts with Congress's decision not to prohibit the reporting of criminal conviction records in the FCRA. *Id.* at 10, ¶ 38. Moreover, on May 10, 2022, the Colorado legislature enacted the Clean Slate Act, which went into effect on August 31, 2022. *Id.*, ¶ 39. The Clean Slate Act amended the CCRA to add subsection 5-18-109(e.5), which prohibits reporting sealed records, expunged records, and records that did not result in a conviction. *Id.* (citing Colo. Rev. Stat. § 5-18-109(e.5)). Plaintiff argues that this conflicts with Congress's decision not to make the FCRA prohibit the

2

reporting of criminal non-conviction records which do not antedate the report by more than seven years.  *Id.*, ¶ 40.

Plaintiff asserts that, "[u]pon information and belief, the Attorney General intends to use his authority to enforce Colo. Rev. Stat. Ann. § 5-18-109 to prohibit the reporting of the criminal conviction records or non-conviction records that PBSA's members currently report in compliance with the requirements of the FCRA."  *Id.*, ¶ 42.  In accordance with that belief, plaintiff brings suit against defendant Philip J. Weiser— Colorado's attorney general—in his official capacity, seeking a declaratory judgment that Colo. Rev. Stat. § 5-18-109 is preempted by the FCRA and seeking injunctive relief prohibiting defendant from enforcing Colo. Rev. Stat. § 5-18-109.  *Id.* at 15-19, ¶¶ 62-82.  On March 18, 2025, defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  Docket No. 8.  Briefing on the motion to dismiss was stayed pending argument on whether jurisdictional discovery should be allowed.  Docket No. 19.  The jurisdictional discovery was ultimately not allowed.  Docket No. 38.  On February 9, 2026, plaintiff filed a response.  Docket No. 41.  On March 2, 2026, defendant filed a reply.  Docket No. 46.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A dismissal under Rule 12(b)(1) is not a judgment on the merits; rather, it is a determination that the court lacks jurisdiction to adjudicate the claim.  *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Caballero v. Fuerzas Armadas Revolucionarias de*

3

*Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (citation omitted).  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

Challenges to subject matter jurisdiction may take two forms—a facial attack or a factual attack—each with distinct analytical frameworks.  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).  A facial challenge focuses on the sufficiency of the allegations in the complaint.  *Id.*  In resolving a facial challenge, "the district court must accept the allegations in the complaint as true."  *Id.*  By contrast, a factual challenge allows a party to "go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."  *Id.* (citation omitted).  In addressing a factual challenge to subject matter jurisdiction, "the court does not presume the truthfulness of the complaint's factual allegations."  *Id.* (citation and quotations omitted); *see also Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) ("a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion").  The burden of establishing subject matter jurisdiction lies with the party asserting it.  *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).  Here, defendant asserts that he is raising a facial challenge, which characterization plaintiff does not dispute.  Docket No. 8 at 4; Docket No. 41 at 12.

## III.  ANALYSIS

Defendant argues that the Court does not have subject matter jurisdiction over this case because defendant is entitled to sovereign immunity under the Eleventh Amendment and because plaintiff does not have associational standing.  Docket No. 8 at 2-3.  Plaintiff argues that defendant is not immune from suit under the *Ex parte*

*Young*, 209 U.S. 123 (1908), exception to sovereign immunity, and that plaintiff does have associational standing. Docket No. 41 at 5-6, 12. Sovereign immunity and standing both implicate the subject matter jurisdiction of the Court. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court"); *Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536, 538 (10th Cir. 1993) ("The issue of standing is jurisdictional in nature.").

### A. Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has construed the Eleventh Amendment to prohibit federal courts from entertaining suits against states brought by their own citizens or citizens of another state without the consent of the state being sued. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). State entities, agencies, and officials sued in their official capacities are immune because they are "an arm of the State," *Mt. Healthy City Sch. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977), and a suit against such officials are "no different from a suit against the State itself." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, Eleventh Amendment immunity "is not absolute" and various exceptions apply. *Feeney*, 495 U.S. at 304.

Under *Ex parte Young*, 209 U.S. 123, 159–60 (1908), "a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an

ongoing violation of federal law and the plaintiff seeks only prospective relief."

*Hendrickson*, 992 F.3d at 965 (citing *Ex parte Young*, 209 U.S. at 159–60; *Verizon Md.*

*Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  "To satisfy this exception,

the named state official 'must have some connection with the enforcement' of the

challenged statute." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).  This connection

exists when the state official that is sued has both (1) "a particular duty to enforce the

statute in question" and (2) "a demonstrated willingness to exercise that duty."  *Id.*

(internal quotations and citation omitted).

### 1.  Duty to Enforce

Plaintiff argues that defendant has a particular duty to enforce the CCRA, both

through his own direct enforcement authority and through his supervision over the

Administrator of the Uniform Consumer Credit Code ("UCCC"), who ostensibly has

enforcement authority over the CCRA.  Docket No. 41 at 7.

### a.  Attorney General's Duty to Enforce the CCRA

The CCRA gives consumers the right to bring a private action to enforce the

CCRA.  Colo. Rev. Stat. § 5-18-116(1).  Nothing in the CCRA expressly grants the

Attorney General the authority to enforce its provisions.  *See generally* Colo. Rev. Stat.

§ 5-18-101 *et seq.*  Nevertheless, according to plaintiff, defendant has conceded that he

possesses "some connection" to enforcement of the CCRA.  Docket No. 41 at 10.

Specifically, plaintiff asserts that defendant acknowledged that "there may be

circumstances where provisions of the CCRA intersect with his statutory authority."  *Id.*

For support, plaintiff cites a transcript of a court hearing before Magistrate Judge Cyrus

Y. Chung.  *Id.* (citing Docket No. 41-3).  As mentioned above, defendant raises a facial

attack on the complaint.  The Court will therefore only consider the allegations of the

6

complaint.  When analyzing facial attacks, "the Court must accept the allegations of the

complaint as true and may not consider evidence outside the complaint."  *Ottawa N.*

*R.R., LLC v. City of Baldwin, Kan.*, 2023 WL 7923152, at *2 (D. Kan. Nov. 16, 2023)

(citing *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).  Here,

the transcript—attached to plaintiff's response as Exhibit C—is evidence which the

Court may not consider.  Docket No. 41-3.

Even if the Court were to analyze the transcript, it would not find that the Attorney

General conceded that he possesses some connection to enforcement of the CCRA.  In

the transcript, Judge Chung seeks clarification that the CCRA provides for a private

right of action.  Docket No. 41-3 at 3.  Defendant confirms that this is the case, and that

the Attorney General does not enforce the CCRA.  *Id.*  Judge Chung then asks if the

Attorney General is unable to enforce the CCRA.  *Id.*  Defendant's counsel answers: "I

don't know exactly the answer to that question in the sense that I don't know if there are

circumstances where provisions of the CCRA could intersect with some other statutory

authority in theory that the Attorney General has that could provide some opportunity for

it to come up, but I would be really reaching and trying to imagine . . . what that would

be."  *Id.* at 3-4.  Defendant's counsel stating that she does not know "if there are

circumstances where provisions of the CCRA could intersect with some other statutory

authority in theory" is not equivalent to a concession from defendant that his statutory

authority intersects with provisions of the CCRA.

Next, plaintiff asserts that defendant has made public statements that he "has

received complaints related to the credit reporting requirements under the UCCC and

encouraging consumers to submit such complaints to 'inform' his enforcement actions."

Docket No. 41 at 10 (citing Docket Nos. 41-1, 41-2).  Plaintiff argues that these public

statements—attached to plaintiff's response as Exhibits A and B—show defendant

acknowledged that he has "statutory duties and obligations" related to regulation of

credit reporting.  *Id.*  Again, plaintiff cites evidence outside the complaint in support of

this argument, which the Court cannot consider in a facial attack.

Even if the Court analyzed this extraneous evidence, it would not find that it

shows defendant has a particular duty to enforce the CCRA.  The two public statements

are press releases on the Attorney General's website which state how many complaints

were filed in 2023 and 2024, and note the top ten categories of complaints.  The

statements indicate that Colorado consumers filed 20,390 complaints in 2023 and

24,473 complaints in 2024.  Docket No. 41-1 at 2; Docket No. 41-2 at 2.  Both press

releases state that complaints relating to "Consumer Loans & Credit Sales" were in the

top ten, noting that "[t]hese complaints include issues under the Uniform Consumer

Credit Code, including interest rates, and credit reporting."  Docket No. 41-1 at 3;

Docket No. 41-2 at 4.  The second press release states that "Complaints inform our

consumer protection work."  Docket No. 41-2 at 2.  None of this shows that defendant

has a particular duty to enforce the CCRA.  Instead, it merely shows that, out of over

40,000 complaints, a fraction involve the UCCC and credit reporting, without specifying

whether any of those complaints involve the allegedly preempted activities in Colo. Rev.

Stat. § 5-18-109.  It also shows that these complaints inform defendant's consumer

protection work, but does not show that defendant has the duty to enforce every

violation featured in the numerous complaints.  Thus, even if the Court could consider

this outside evidence, it would not find that the press releases show defendant has any

enforcement duties regarding the CCRA.

Plaintiff only raises one argument that does not rely on outside evidence,

namely, that Colorado law grants defendant the authority to "'independently initiate and

bring civil and criminal actions to enforce state laws.'"  Docket No 41 at 10 (quoting

Colo. Rev. Stat. § 24-31-101(1)(h)(i)).  This point merely reflects defendant's general

authority to enforce the law.[2]  As noted by the Tenth Circuit, "if a general duty to enforce

the law were sufficient to avoid immunity, 'then the constitutionality of every act passed

by the legislature could be tested by a suit against the governor and the attorney

general' because the governor is, 'in a general sense, charged with the execution of all

[a state's] laws' and the attorney general 'might represent the state in litigation involving

the enforcement of its statutes.'"  *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732,

739 (10th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157).  Finding this

inconsistent with state sovereign immunity, the court held that "*Ex parte Young* requires

something 'more than a mere general duty to enforce the law.'"[3]  *Id.* (citing *Hendrickson*,

---

[2] Notably, that authority is discretionary, as § 24-31-101(1)(h)(i) states that defendant *may* initiate such actions.  Colo. Rev. Stat. § 24-31-101(1)(h)(i).  Plaintiff identifies no instances of defendant using his authority to enforce the challenged provisions of the CCRA.  *See generally* Docket No. 1.

[3] Conversely, in *Petrella v. Brownback*, 697 F.3d 1285, 1294 (10th Cir. 2012), the Tenth Circuit found that an attorney general was a proper defendant under *Ex parte Young* because he "ha[d] responsibility for the enforcement of the laws of the state." However, in *Free Speech*, 119 F.4th at 740, the Tenth Circuit noted that "the statute at issue in *Petrella* did not include any particular enforcement provisions, meaning that the ability to enforce it was necessarily encompassed by the attorney general's overall enforcement authority."  *Id.* (citing *Petrella*, 697 F.3d at 1294).  Thus, the court found that *Petrella's* holding did not apply when the statute at issue "places enforcement ability specifically with private individuals."  *Id.* (citation omitted).  Here, the CCRA specifies that consumers have a right to enforce it.  Colo. Rev. Stat. § 5-18-116(1).

992 F.3d at 965); *see also Sgaggio v. Weiser*, No. 22-cv-01791-PAB, 2022 WL
3700723, at *4 (D. Colo. Aug. 26, 2022) ("a general duty to enforce the law is
insufficient for *Ex parte Young*").  Thus, defendant's general authority to initiate civil
actions to enforce state laws does not give rise to a "particular duty" to enforce the
CCRA.

### b.  Administrator's Duty to Enforce the CCRA

Plaintiff argues that defendant has authority to enforce the CCRA through his
supervision of the Administrator of the UCCC (the "Administrator").  Docket No. 41 at 7.
Plaintiff contends that the Administrator has enforcement authority over the CCRA.  *Id.*
Plaintiff asserts that the Tenth Circuit has held that *Ex parte Young* applies when the
named defendant is responsible for supervising the administration of a challenged
provision by subordinate officials, even if the named defendant is not directly
empowered to ensure compliance with the challenged provision.  *Id.* (citing *Kitchen v.
Herbert*, 755 F.3d 1193, 1201 (10th Cir. 2014)).

The cited portion of *Kitchen* analyzes standing, not *Ex parte Young*.  *Kitchen*, 755
F.3d at 1201-04.  The court held that, for purposes of standing, a state official is a
proper defendant if he or she is responsible for supervising local officials who administer
a challenged provision.  *Id.* at 1204 (citing *Papasan v. Allain*, 478 U.S. 265, 282 n.14
(1986)).  However, the court noted that standing requires the named defendant to have
the power to enforce a challenged statute.  *Id.* at 1201 (citation omitted).  The court then
observed that "[w]hether the Defendants have enforcement authority is related to
whether, under *Ex parte Young*, they are proper state officials for suit."  *Id.* (citation

---

Thus, consistent with *Free Speech*, having a general duty to enforce the law does not
establish that defendant has a particular duty to enforce the CCRA.

omitted).  Thus, *Kitchen's* holding arguably also applies when determining whether a defendant has enforcement authority under *Ex parte Young*.  *See Scott v. Hiller*, No. 21-cv-02011-PAB-KLM, 2022 WL 16698694, at *5 (D. Colo. July 11, 2022), *report and recommendation adopted*, 2022 WL 4726038 (D. Colo. Oct. 3, 2022) (citing *Kitchen's* holding in the context of *Ex parte Young*).  Defendant does not dispute that *Kitchen's* holding extends to *Ex parte Young*.  *See generally* Docket No. 8; Docket No. 46.  The Court will presume it does so for the purpose of ruling on this motion.

Plaintiff is correct that the Attorney General has supervisory authority over the Administrator.  Section 5-6-103 defines the Administrator as "the assistant attorney general to be designated by the attorney general."  Colo. Rev. Stat. § 5-6-103.  While the statute does not say so explicitly, the Court presumes that the Attorney General has supervisory authority over the assistant attorney general.

Plaintiff is incorrect, however, that the Administrator has enforcement authority over the CCRA.  The powers of the Administrator are contained in § 5-6-104.  Plaintiff notes that the Administrator is entitled to "[r]eceive and act on complaints, take action designed to obtain voluntary compliance with this code, or commence proceedings on his or her own initiative."  Docket No. 41 at 8 (Colo. Rev. Stat. § 5-6-104(1)(a)).  Plaintiff also cites to Colorado Supreme Court cases which stand for the proposition that the Administrator is charged with the enforcement of the UCCC.  *Id.* (citations omitted); *see Oasis Legal Fin. Grp., LLC v. Coffman*, 361 P.3d 400, 404 n.4 (Colo. 2015) ("The Administrator is charged with the administration and enforcement of the UCCC."); *Tulips Invs., LLC v. State ex rel. Suthers*, 340 P.3d 1126, 1136 (Colo. 2015) (noting the "Administrator's ability to effectuate the purpose of the UCCC.").

11

However, as noted by defendant, these cases are referring to the UCCC, but not the CCRA.  Title 5 is labeled as the Consumer Credit Code.  *See* Colo. Rev. Stat. § 5-1-101 *et seq*.  However, "Articles 1 to 9 of this title [5] shall be known and may be cited as the "Uniform Consumer Credit Code", referred to in said articles as the 'code.'"  Colo. Rev. Stat. § 5-1-101.  Thus, the Administrator's ability to enforce the UCCC refers to her ability to enforce Articles 1 to 9 of Title 5.  The CCRA is found in Article 18.  *See* Colo. Rev. Stat. § 5-18-101 *et seq*.  Moreover, § 5-1-101 is explicit that—when used in Articles 1 to 9—the word "code" refers to Articles 1 to 9.  As a result, the Administrator's ability to "take action designed to obtain voluntary compliance with this code," which is mentioned in Article 6, Colo. Rev. Stat. § 5-6-104(1)(a), refers to her ability to take action designed to obtain voluntary compliance with Articles 1 to 9.

Nevertheless, plaintiff argues that the term "this code" refers to the entirety of Title 5, not just Articles 1 to 9.  Docket No. 41 at 9.  For support, plaintiff notes that the term "code" is not defined in Title 5's "General definitions" or "Index of definitions."  *Id.* (citing Colo. Rev. Stat. §§ 5-1-301, 5-1-303).  However, the term is defined in the "Short title."  Colo. Rev. Stat. § 5-1-101.  Plaintiff provides no argument why the Court should ignore the definition of a term based on where in the statute it is defined.  The Court finds that the definition in § 5-1-101 is binding regardless of where in Title 5 it appears.  Moreover, plaintiff's argument is undermined by the text of § 5-1-301.  There, the statute references definitions "as used in this code."  Colo. Rev. Stat. § 5-1-301.  However, as evidenced by the index of definitions, it does not define any terms outside of Articles 1 to 9.  *See generally* Colo. Rev. Stat. § 5-1-303.  Conversely, Articles 10, 16, 17, 18, 19, and 20 all contain their own "definitions" sections, which define terms used in their

12

respective Articles.  *See* Colo. Rev. Stat. §§ 5-10-301, 5-16-103, 5-17-102, 5-18-103, 5-19-202, 5-20-103.  This provides further support that the term "code" refers to the UCCC when used in Articles 1-9.

Plaintiff notes that the term "this code" is used in Article 19, arguing this is evidence that "this code" refers to all of Title 5.  Docket No. 41 at 9 (citing Colo. Rev. Stat. § 5-19-110(6)(a)).  Notably, Article 19 predominately refers to itself as "this part 1," and only uses the term "this code" once.  *See generally* Colo. Rev. Stat. § 5-19-110. But, regardless of how Article 19 refers to itself, § 5-1-101 only defines the term "code" as it is used in Articles 1 to 9.  Colo. Rev. Stat. § 5-1-101.  Thus, the term "code" being used differently in other Articles is not indicative that "code" has a different definition in Articles 1 to 9.

Next, plaintiff argues that "the Colorado Legislature specifically moved the CCRA into the UCCC in 2017."  Docket No. 41 at 9 (citing Docket No. 1 at 9, ¶ 36).  The Court construes plaintiff's reference to the UCCC as being a reference to Title 5 generally.[4] This argument is unavailing.  Regardless of where the CCRA is located, the Administrator's enforcement powers are clearly defined, and do not extend to the CCRA.  *See* Colo. Rev. Stat. § 5-6-104.

Defendant notes that "Plaintiff's reading must also be rejected because it would render numerous provisions of Title 5 superfluous."  Docket No. 46 at 7.  Specifically, as mentioned above, § 5-6-104(1)(a) states that the Administrator has authority to "take action designed to obtain voluntary compliance with this code."  Colo. Rev. Stat. 5-6-

---

[4] The portion of the complaint which plaintiff cites states that the CCRA was relocated to Colo. Rev. Stat. § 5-18-101 *et seq.* in 2017.  Docket No. 1 at 9, ¶ 36.

104(1)(a).  Numerous other Articles also provide that the Administrator has authority to enforce their terms.  *See, e.g.*, Colo. Rev. Stat. §§ 5-10-801, 5-16-114, 5-19-110, 5-20-114.[5]  If the Administrator already has authority to enforce the entirety of Title 5, then these provisions would be superfluous.  Courts "must avoid constructions that would render any words or phrases superfluous."  *Dep't of Revenue v. Agilent Techs., Inc.*, 441 P.3d 1012, 1016 (2019).  Accordingly, the Court finds that "this code," as used in § 5-6-104(1)(a), refers to Articles 1 to 9 of Title 5.

Finally, plaintiff argues that defendant publicly admitted that complaints related to credit reporting raise issues under the UCCC.  Docket No. 41 at 10 (citing Docket No. 41-1; Docket No. 41-2).  Plaintiff claims that the CCRA is the only section of Title 5 which regulates credit reporting, therefore making defendant's statement an admission that he considers the CCRA to be a part of the UCCC.  *Id.*  Again, plaintiff cites press releases—outside evidence which the Court cannot consider in a facial attack.  But even if the Court were to consider these documents, it finds plaintiff's argument unavailing.  A press release is not a binding interpretation of the law, and the Court has already determined that Article 18 is not encompassed in the UCCC as defined in § 5-1-101.  Moreover, the Court does not find that the press releases consider credit reporting to fall under the purview of the UCCC.  The press releases note that the Attorney General received a category of complaints labeled "Consumer Loans & Credit Sales."  Docket No. 41-1 at 3; Docket No. 41-2 at 4.  Within that category, the press releases state that "[t]hese complaints include issues under the Uniform Consumer Credit Code,

---

[5] Article 18, the CCRA, has no such provision, instead allowing for a private right of action for consumers.  Colo. Rev. Stat. § 5-18-116(1).

14

including interest rates, and credit reporting.  They also include unlicensed activity,

including tribal lending."  Docket No. 41-1 at 3; Docket No. 41-2 at 4.  The comma after

"interest rates" indicates that the complaints include issues under the UCCC, which

includes interest rates, and also includes, separate from the UCCC, credit reporting.

The press releases do not support plaintiff's position.

In summary, the Administrator does not have enforcement authority over the

CCRA, and plaintiff has failed to show that defendant has a particular duty to enforce

the CCRA.[6]  Accordingly, defendant is entitled to sovereign immunity, and the Court will

grant the motion to dismiss.

### B. Associational Standing

"Because the Court finds that it does not have subject matter jurisdiction over

plaintiff's claim because defendants are entitled to Eleventh Amendment immunity, the

Court need not address whether plaintiff has Article III standing."  *Morrill v. Aarhaus*, No.

24-cv-00199-PAB-KAS, 2025 WL 815383, at *9 (D. Colo. Mar. 14, 2025).

### IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(1)

[Docket No. 8] is **GRANTED**.  It is further

---

[6] Because the Court has found that defendant does not have a particular duty to enforce the CCRA, it need not analyze the second prong—whether defendant has a "demonstrated willingness" to enforce the CCRA.  The Court notes, however, that plaintiff's only argument related to whether defendant has a demonstrated willingness to enforce the CCRA relies on the press releases.  Docket No. 41 at 11-12.  This is outside evidence which the Court cannot consider in a facial attack.  Thus, if the Court were to consider the second prong, it would find that it is not satisfied.

ORDERED that plaintiff's claims are **DISMISSED without prejudice**.[7]  It is

further

ORDERED that this case is closed.

DATED March 20, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[7] "[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice."  *Brereton*, 434 F.3d at 1216 (citations omitted).